### STATE

v.

### Paul HURTEAU.

### No. 2001–183–C.A.

Supreme Court of Rhode Island.

Nov. 25, 2002.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, Paul Hurteau (defendant), appeals a conviction for resisting arrest, arguing that the trial justice improperly refused to issue a jury instruction explaining an arrestee's right to defend himself against an arrest effectuated with excessive force. Because we discern no error in the trial justice's refusal to issue the instruction, we affirm. This matter came before the Court for oral argument on October 1, 2002, pursuant to an order directing both parties to appear and show cause why the issues raised by this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issue raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

### I

### Facts and Travel

On September 13, 1997, Detective Roger Biron (Det. Biron) of the Woonsocket Police Department responded to Michelle Dalton's (Dalton) home in response to a 911 call. Upon arrival he saw several people standing outside. According to Det. Biron, the bystanders stated that "it

[sounded] like somebody was being killed in the house and that somebody had been kicking the door down." Shortly thereafter, Woonsocket police officer Brien Godin (Officer Godin), arrived and proceeded into defendant's home with Det. Biron.

After they entered defendant's home, Det. Biron and Officer Godin discovered David Bilodeau (Bilodeau) sitting at the kitchen table acting very nervous, motioning with his hands, and holding his neck, which had a deep red mark just above his Adam's apple. The officers then heard a woman shouting and screaming. They quickly ascended the stairs, entered a bedroom and observed Dalton sitting on a bed. There was a broken telephone lying on the floor, and defendant was standing at a bureau with his back turned toward the officers. Detective Biron and Officer Godin ordered defendant away from the bureau. The defendant refused to move, and attempted to light a cigarette. At that time the officers physically moved defendant closer to the doorway where they were standing and away from Dalton. After speaking to Dalton, Det. Biron placed defendant under arrest.

After the arrest, defendant began flailing his arms violently in an effort to get away from the officers. The officers struggled with defendant, but were able to take him to the ground, handcuff him and escort him into the hallway. As Det. Biron and Officer Godin were restraining defendant, other officers arrived to provide assistance. Shortly thereafter, Det. Biron and Officer Godin went downstairs to interview Bilodeau. After speaking with Bilodeau Det. Biron and Officer Godin heard a commotion on the stairway and responded immediately. They observed the other police officers struggling with defendant as they attempted to descend the stairs. The defendant escaped the officers' grasp and rushed down the stairs. Officer Godin

grabbed defendant and, with the aid of Sergeant Michael Nowak (Sgt. Nowak), brought defendant outside, despite his twisting, kicking, and thrashing. Concluding that defendant's behavior would put Officer Godin, Sgt. Nowak and defendant in danger when trying to traverse the two sets of stairs that led to the street, the two officers brought defendant to the ground to calm him down. Once defendant calmed down, the officers let him to his feet and walked him down the stairs to the sidewalk. After further struggle on the sidewalk, the officers successfully put defendant in the police car. While in the police car defendant attempted to kick out its window. Fearing that defendant might break the window, Sgt. Nowak sprayed defendant with pepper spray to subdue him. The officers then followed standard operating procedure for treating a person whom they had pepper-sprayed and took defendant to the hospital to treat his eyes.

The state initially charged defendant with two counts of simple assault and one count each of domestic vandalism, assault on a uniformed police officer, and resisting arrest. After a trial, a jury found defendant guilty of resisting arrest, and acquitted him of one of the counts of simple assault. All of the other charges were dismissed. The trial justice sentenced defendant to a term of two months in prison, which was suspended with probation. The defendant timely appealed.

## II

### Jury Instructions

 The defendant argues that the trial justice erred by failing to instruct the jury about an individual's right to defend one's self from an arrest effectuated with excessive force. The standard of review for jury instructions is well settled. "The charge given by a trial justice need only 'adequately cover[ ] the law.'" *State v.*

*Krushnowski,* 773 A.2d 243, 246 (R.I.2001) (quoting *State v. Grundy,* 582 A.2d 1166, 1170 (R.I.1990)). "On review, we examine the instructions in their entirety to ascertain the manner in which a jury of ordinary intelligent lay people would have understood them, *State v. Gomes,* 604 A.2d 1249, 1256 (R.I.1992), and we review challenged portions of jury instructions 'in the context in which they were rendered.' [*State v.*] *Gordon,* 508 A.2d [1339,] 1349 [(R.I.1986)]." *Krushnowski,* 773 A.2d at 246.

▮ Under G.L. 1956 § 12–7–10, an arrestee must "submit peacefully and, if he has been unlawfully arrested, * * * pursue his remedy in the courts." *State v. Gelinas,* 417 A.2d 1381, 1385 (R.I.1980). A defendant, however, still has a right to defend himself when police use excessive force against him. *See id.* (citing *State v. Ramsdell,* 109 R.I. 320, 327, 285 A.2d 399, 404 (1971)). Whether a defendant has the right of self-defense against the police naturally depends on whether there was excessive force in effectuating the arrest. *See id.*

▮ It is a well-developed principle that in making an arrest an officer has the right to use the amount of force that is necessary to properly perform his duty. *See* § 12–7–8; *see also Ramsdell,* 109 R.I. at 326, 285 A.2d at 404. If the arresting officer uses reasonable force, the privilege of self-defense is inapplicable. *See id.* at 327, 285 A.2d at 404. Furthermore, the trial justice need only give jury instructions concerning an arrestee's privilege to defend oneself when there is evidence, "however tenuous or incredible," that the police used excessive force. *See Gelinas,* 417 A.2d at 1384.

In this case there was no evidence at trial that the police used excessive force in arresting defendant. Rather, the evidence clearly demonstrated that any force the police used was reasonable under the circumstances and was applied in order to do their duties. Detective Biron and Officer Godin arrived at Dalton's home in response to a 911 call. They could not anticipate the level of danger, and became even more vigilant after arriving and hearing witnesses say that it sounded as if someone was being killed inside. When they encountered defendant he refused to comply with their orders. Thus, Det. Biron and Officer Godin had every reason to fear for their safety and the safety of everyone else present at the scene. The uncontradicted evidence shows that the police did not apply any force to defendant until he refused to cooperate with their orders.

The defendant presented no evidence at trial that the police used excessive force while arresting him. Consequently, we conclude that the defendant was not entitled to a jury instruction detailing an arrestee's privilege to defend himself because there was no evidence that the police used anything but reasonable force in making the arrest.

## Conclusion

For the reasons set out above, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case may be returned to the Superior Court.